# UNITED STATES DISTRICT COURT
FOR EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE RESTASIS (CYCLOSPORINE OPHTHALMIC EMULSION) ANTITRUST LITIGATION | 18-MD-2819 (NG) (LB) |
| THIS DOCUMENT APPLIES TO:<br><br>*1199SEIU National Benefit Fund et al. v. Allergan, Inc.*, 17-cv-6755;<br><br>*American Federation of State, County & Municipal Employees District Council 37 Health & Security Plan v. Allergan, Inc.*, 17-cv-6684;<br><br>*Sergeants Benevolent Association Health & Welfare Fund v. Allergan, Inc.*, 17-cv-7300;<br><br>*Philadelphia Federation of Teachers Health & Welfare Fund v. Allergan, Inc.*, 17-cv-7377;<br><br>*St. Paul Electrical Workers' Health Plan v. Allergan, Inc.*, 18-cv-41;<br><br>*FWK Holdings, LLC v. Allergan, Inc.*, 18-cv-677;<br><br>*International Union of Operating Engineers Local 501 Security Trust Fund v. Allergan, Inc.*, 18-cv-749;<br><br>*United Food & Commercial Workers Unions & Employers Midwest Health Benefits Fund et al. v. Allergan, Inc.*, 18-cv-816;<br><br>*Self Insured Schools of California v. Allergan, Inc.*, 18-cv-968;<br><br>*Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund v. Allergan, Inc.*, 18-cv-969;<br><br>*Rochester Drug Co-Operative, Inc. v. Allergan, Inc.*, 18-cv-970;<br><br>*Plumbers & Pipefitters Local 178 Health & Welfare Trust Fund v. Allergan, Inc.*, 18-cv-972; and | FILED<br>IN CLERK'S OFFICE<br>U.S. DISTRICT COURT E.D.N.Y.<br><br>★ OCT 18 2018 ★<br><br>BROOKLYN OFFICE<br><br><br><br>OPINION AND ORDER ON PLAINTIFFS' AND DEFENDANT'S MOTIONS TO COMPEL |

*KPH Healthcare Services, Inc., a/k/a Kinney Drugs, Inc., v. Allergan, Inc.*, 18-cv-974.

**GERSHON, United States District Judge:**

This multi-district litigation involves allegations that defendant Allergan unlawfully prolonged its monopoly over the sale of cyclosporine ophthalmic emulsion by delaying the entry of generic versions of its drug Restasis®, a medication used to treat dry-eye disease. Plaintiffs have filed 13 separate putative class action complaints, which have been consolidated into two complaints—one on behalf of the Direct Purchaser Plaintiffs ("DPPs"), who bought Restasis® directly from Allergan, and one on behalf of the End-Payor Plaintiffs ("EPPs"), who bought the drug at another point in the chain of sale.[1] Plaintiffs' allegations are set forth in detail in my Opinion and Order on Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) for Failure to Allege Causation, dated September 18, 2018. (Docket No. 146.)

Each side has moved to compel certain discovery from the other. On September 26, 2018, I heard oral argument on the motions. For the reasons stated below, plaintiffs' motion is granted, and defendant's motion is granted in part and denied in part.

**I.     Plaintiffs' Motion for the Inclusion of Brenton Saunders, Robert Bailey, and Arnold Pinkston as Document Custodians**

Plaintiffs ask me to order Allergan to conduct specific searches on the files of Brenton Saunders, Allergan's current Chief Executive Officer; Robert Bailey, Allergan's current General Counsel and Corporate Secretary; and Arnold Pinkston, Allergan's General Counsel and Corporate

---

[1] Three additional complaints were filed by large retailers—Walgreen Co., The Kroger Co., Albertsons Companies, Inc., and HEB Grocery Company L.P.; CVS Pharmacy, Inc.; and Rite Aid Corporation and Rite Aid Hdqtrs. Corp.—who directly purchased Restasis® from Allergan and do not seek to proceed via class action. Those plaintiffs are not involved in these discovery disputes.

Secretary from 2011 to 2015. Specifically, plaintiffs ask that Mr. Saunders' files be searched for documents relating to Allergan's sale and transfer of its patents to the Saint Regis Mohawk Tribe as well as documents relating to the *inter partes* review ("IPR") proceedings at issue in this case. They request that Allergan conduct searches of Mr. Bailey's files for documents relating to IPR. Finally, plaintiffs ask that I order Allergan to run eight different searches on Mr. Pinkston's files. Allergan opposes these additional searches. In the event I agree with plaintiffs that Mr. Pinkston should serve as a custodian, however, Allergan proposes that his files be searched with only one search string. Allergan asserts that its proposed search string would be less likely than the others to turn up privileged documents.

Defendant principally contends that documents relating to the Mohawk Tribe transaction and IPR are only tangentially relevant, since plaintiffs have acknowledged that these events did not cause any delay in the Food and Drug Administration's approval of a generic version of Restasis®. I do not find this argument convincing. That these events are not relevant to causation does not mean that they will not prove relevant to other issues in this case.

Defendant also argues that the burden of producing the requested documents—which would require creating extensive privilege logs concerning the files of Mr. Bailey and Mr. Pinkston and would involve searching the files of a current CEO, Mr. Saunders—outweighs any benefit they would provide to plaintiffs. Allergan notes that it is already producing documents from 43 different custodians and that documents from plaintiffs' proposed additional searches would thus be cumulative and of marginal assistance. I find, however, that plaintiffs have established a likelihood that a significant number of non-cumulative and non-privileged documents will emerge

from their request. Thus, even though many privileged documents will have to be logged, the burden on the defendant is justified and proportional to the needs of the case.

Plaintiffs' motion is granted.

## II. Defendant's Motion to Compel[2]

### A. Documents from Plaintiff KPH Healthcare Services, Inc.

KPH Healthcare Services, Inc. ("KPH"), one of the three named DPPs, operates retail and online pharmacies in the Northeast under the name Kinney Drugs. The company did not directly purchase Restasis® from Allergan. Instead, KPH is proceeding in the lawsuit by partial assignment from McKesson, a wholesaler that was a direct purchaser of Restasis®. McKesson assigned KPH the right to pursue an antitrust claim against Allergan for McKesson's purchases of Restasis® that were subsequently resold to KPH.[3]

Allergan has moved to compel documents regarding KPH's financial performance, including its profit and loss statements, cash flow statements, financial statements, balance sheets, and tax returns. At oral argument, defendant indicated that it would narrow its request to "very basic information" showing KPH's financial resources, such as an annual audit report. Defendant asserts that this information will allow it to "better understand" KPH's business and whether its interests align with absent class members. Relying on *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 253 (3d Cir. 2017), and *In re Androgel Antitrust Litig.*, 2018 WL 3424612, at *2–3 (N.D. Ga.

---

[2] At oral argument, counsel for the DPPs and defendant indicated that they had reached a resolution concerning the portion of defendant's motion seeking resale and pricing information from the three named DPPs. Additionally, the parties indicated that they would attempt to resolve defendant's requests for documents from plaintiff FWK Holdings, Inc.

[3] Allergan also moved to compel from KPH documents relating to the assignment of McKesson's claim to KPH. At oral argument, however, plaintiffs represented that KPH planned to produce documents responsive to this request. Plaintiffs noted that the documents will appear on a privilege log because they take the position that they are all privileged. Based on that representation, defendant confirmed that its request for this information had been resolved.

July 16, 2018), defendant further argues that information concerning "the financial resources of class members" is relevant to class certification, because a court must consider if individual class members have the capacity and resources to prosecute claims should a class not be certified.

Defendant's narrowed request to compel basic financial information from KPH is granted. Producing this information will place a minimal burden on KPH, and there is a possibility that it will be relevant to determining adequacy or the impracticality of joinder at the class certification stage of this litigation. The parties are directed to identify which documents KPH should produce to satisfy defendant's request.

### B. Documents Showing How EPPs Set Premiums and Employer Contributions

Allergan also moves to compel from the EPPs information sufficient to show the impact of drug prices on how they set their premiums and employer contributions. Defendant argues that this information is relevant to determining if EPPs passed drug overcharges on to their customers. While "pass-on" is not a defense under the federal antitrust laws, Allergan notes that it is a defense under some of the state laws under which EPPs seek damages.

Defendant has not shown that this information is relevant to its defense. First, I find that "insurance premiums are not a 'pass-on' of alleged overcharges because premiums are set by anticipating future projected costs, not to recover money that insurers paid in the past." *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 2016 WL 6897809, at *2 (D. Mass. Sept. 19, 2016); *accord In re Lidoderm Antitrust Litig.*, 2017 WL 679367, at *23 (N.D. Cal. Feb. 21, 2017). Second, this information would not allow defendant to determine how the price of Restasis® influenced premiums since EPPs reimburse "thousands—if not tens of thousands—of different drugs and dosages." *In re Asacol Antitrust Litig.*, 2017 WL 53695, at *4 (D. Mass. Jan. 4, 2017).

To argue that it is entitled to this discovery, defendant relies solely on *Ironworkers Local Union 68 v. AstraZenaca Pharm., LP*, 634 F.3d 1352 (11th Cir. 2011). There, the Eleventh Circuit held that the plaintiffs, which—like the EPPs here—were labor unions and health and welfare funds of labor unions, *id.* at 1354 n.1, had not plausibly alleged economic injury from the false representations of the defendant pharmaceutical company. *Id.* at 1369. The Court reasoned that the plaintiffs likely "adjusted their premiums upward" to "take into account all known risks that might cause the insurers to pay for medically unnecessary or inappropriate prescriptions," including those induced by fraud. *Id.* at 1368–69. *Ironworkers* involved claims of fraud under the Racketeer Influenced and Corrupt Organizations Act and not antitrust violations. *See id.* at 1357. But more importantly, insofar as *Ironworkers* supports defendant's position that drug overcharges are passed on to consumers through increased premiums, I do not agree with its analysis. *See In re Lidoderm*, 2017 WL 679367, at *22 n.32 (collecting cases in which courts disagreed with the reasoning in *Ironworkers*).

Defendant's motion to compel this discovery from the EPPs is denied.

### III. Conclusion

Plaintiffs' motion to compel discovery from Brenton Saunders, Robert Bailey, and Arnold Pinkston is granted in full. Defendant's motion to compel is granted to the extent that KPH is ordered to provide Allergan with documents establishing its financial position, as agreed upon by the parties. Defendant's motion is otherwise denied.

**SO ORDERED.**

Dated: October 17, 2018
Brooklyn, New York

/s/ Nina Gershon
**NINA GERSHON**
**United States District Judge**